UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:17-CV-609-BR

FLECHERLENE MCNEILL,

    Plaintiff,

v.

FAYETTEVILLE STATE UNIVERSITY,

    Defendant.

ORDER

This matter is before the court on the 27 July 2018 Memorandum and Recommendation ("M&R") of U.S. Magistrate Judge Kimberly A. Swank. (DE # 19.) In the M&R, Judge Swank recommends that defendant's motion pursuant to Federal Rule of Civil Procedure 12(b)(b) be denied except with respect to plaintiff's request for punitive damages. Defendant filed objections to the M&R, (DE # 21), to which plaintiff filed a response, (DE # 22). As such, the court conducts a *de novo* review of those portions of the M&R to which defendant has lodged an objection. See 28 U.S.C. § 636(b)(1).

    I.    BACKGROUND

Plaintiff began working for defendant in November 2005, and became Cashier Supervisor in April 2009. (Compl., DE #1, ¶¶ 6–7.) Part of plaintiff's job duties entailed depositing the Imprest Change Fund—a cash currency fund maintained for the purpose of providing change at university functions—at the end of each fiscal year. (Id. ¶¶ 24–25.) Defendant's longstanding

policy is to deposit the Imprest Change Fund only after the last event occurring before the end of the fiscal year. (Id. ¶¶ 26, 27.)

Plaintiff suffers from short-term memory problems, severe anxiety, and post-traumatic stress disorder ("PTSD"). (Id. ¶ 8.) Plaintiff's supervisor, Cynthia Jones, was aware of plaintiff's disability, as she often referenced it in the presence of others. (Id. ¶ 9.) When plaintiff sought and obtained FMLA leave in November 2013, Jones voiced her displeasure with plaintiff's leave. (Id. ¶¶ 10–12.) Upon her return, Jones berated plaintiff for taking time off. (Id. ¶ 13.) Plaintiff reported this incident to Jones's supervisor, who referred plaintiff to Human Resources. (Id. ¶ 14.) Human Resources thereafter referred plaintiff to a therapist, who recommended that plaintiff take FMLA leave from March 2014 through June 2014 due to her anxiety and PTSD. (Id. ¶ 15.) Upon plaintiff's return, Jones continued making snide comments about plaintiff's disability. (Id. ¶ 16.)

In November 2014, plaintiff requested and was approved for FMLA leave to address her mother's death. (Id. ¶ 17.) Jones again responded with hostility. (Id.)

At the recommendation of her psychiatrist, plaintiff again took approved FMLA leave from 14 June 2016 through 1 August 2016. (Id. ¶¶ 21.) Pursuant to established procedure—because there was an upcoming event that would require the use of the Imprest Change Fund—plaintiff did not deposit it prior to her departure. (Id. ¶¶ 26, 28.) Rather, she provided Jones with keys and the alarm code and instructed her temporary replacement how to deposit the fund in her absence. (Id. ¶¶ 29–30.)

Jones called plaintiff on 14 June 2016 to ask why she was absent from work. (Id. ¶ 32.) She expressed her anger that plaintiff was out on approved FMLA leave. (Id.) Jones again

called plaintiff on 28 June 2016—this time, from plaintiff's own office phone—to inform her that the Imprest Change Fund was missing. (Id. ¶ 34.) Although plaintiff provided Jones with the key, Jones told her that they had to get a locksmith to open the vault. (Id. ¶ 35.)

Two days later, a Campus Police detective contacted plaintiff to discuss the missing money. (Id. ¶ 38.) The detective informed her she was not under arrest, but accused her of stealing the missing money. (Id. ¶ 43.) Due to the stress of the situation, plaintiff's psychiatrist extended her FMLA leave to 29 August 2016. (Id. ¶ 46.) Plaintiff submitted FMLA paperwork to Human Resources, and also requested shared leave. (Id. ¶ 47.) In violation of defendant's policy, Jones herself denied plaintiff's shared leave request. (Id. ¶¶ 48–49.) Plaintiff was terminated on 25 August 2016 for failing to follow proper procedure when depositing the Imprest Change Fund. (Id. ¶ 57.)

Plaintiff brought this action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), alleging that defendant wrongfully discharged her because of her disabilities, unlawfully interfered with her use of FMLA benefits, and retaliated against her for taking FMLA leave. She seeks compensatory and punitive damages.

## II. DISCUSSION

To survive the 12(b)(6) motion on her ADA claim, plaintiff must plead facts plausibly demonstrating that (1) she was a qualified individual with a disability, (2) she was discharged, (3) she was meeting her employer's legitimate expectations at the time of discharge, and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination. See Reynolds v. American Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012).

In order to survive the 12(b)(6) motion on her FMLA interference claim, plaintiff must plead facts plausibly demonstrating that (1) she was entitled to an FMLA benefit, (2) her employer interfered with an FMLA benefit, and (3) that interference caused harm. See Adams v. Anne Arundel Cnty. Pub. Sch., 789 F.3d 422, 427 (4th Cir. 2015).

Finally, to survive the 12(b)(6) motion on her FMLA retaliation claim, plaintiff must plead facts plausibly demonstrating (1) she engaged in a protected activity, (2) her employer took an adverse action against her, and (3) the adverse action was causally connected to the protected activity. Vannoy v. Fed. Reserve Bank of Richmond, 827 F.3d 296, 302 (4th Cir. 2016).

Defendant argues Judge Swank drew improper inferences from the complaint regarding whether the elements of each claim were satisfied. While plaintiff is required to plead sufficient facts "to raise a right to relief above the speculative level" and to satisfy the court that the claim is "plausible on its face," she is not required to use any "precise or magical words in [her] pleading." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 418 (4th Cir. 2014). The court is permitted to draw *reasonable* inferences from plaintiff's complaint that all elements of each claim exist. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

First, defendant points to Judge Swank's inference that plaintiff's PTSD and short-term memory loss disabilities could "'affect major life activities such as work.'" (DE # 21, at 3 (quoting DE # 19, at 9).) A discrimination claim under the ADA requires that the disability substantially limit a major life activity. 42 U.S.C. § 12102(1); Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 236 (4th Cir. 2016). The phrase "substantially limits" "is not meant to be a demanding standard," and determining "whether an impairment 'substantially

limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(i), (iii). In fact, the term "'substantially limits' shall be construed broadly in favor of expansive coverage." Id. § 1630.2(j)(1)(i). Further, "it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: . . . post-traumatic stress disorder . . . substantially limit[s] brain function." Id. § 1630.2(j)(3)(iii).

Plaintiff alleges that she "has a disability: she has had a stroke which causes occasional short-term memory loss and she has severe anxiety and Post-Traumatic Stress Disorder." (Compl., DE # 1, ¶ 8.) Further, she characterizes her anxiety and PTSD as "sever[e]." (Id. ¶ 15.) As such, this court can draw a reasonable inference that severe anxiety and PTSD, coupled with short-term memory deficiencies, could substantially limit major life activities. Thus, the court rejects defendant's argument.

Second, defendant objects to Judge Swank's inference that plaintiff was meeting her employer's legitimate expectations. (DE # 21, at 3–4.) As plaintiff's complaint states that she "was fulfilling [defendant's] legitimate expectations at the time of discharge," (DE # 1, ¶ 61), the court rejects defendant's argument.

Third, defendant objects to Judge Swank's inference that because of Jones's prior hostility towards plaintiff regarding her FMLA leave, "'[s]uch displeasure from a supervisor could reasonably discourage an employee from taking FMLA leave.'" (DE # 21, at 4 (quoting DE # 19, at 11).) Plaintiff pleaded several allegations that permit the court to draw a reasonable inference that defendant interfered with her FMLA rights. Plaintiff alleges that her supervisor expressed her displeasure and hostility with plaintiff's use of FMLA leave. (Compl., DE # 1, ¶¶ 12, 13, 17, 32.) Additionally, plaintiff alleges that despite the fact that defendant approved her FMLA leave request, her supervisor called her while she was on leave and was angry about

5

plaintiff's FMLA leave. (Id. ¶ 32.) These allegations support the reasonable inference that defendant discouraged plaintiff from taking FMLA leave.

Further, plaintiff alleges that her supervisor called her on June 28, 2016—while plaintiff remained on approved FMLA leave—to tell her that the change fund was missing and a locksmith had to be called to access the vault. (Id. ¶¶ 33, 34, 35.) Defendant objects to Judge Swank's conclusion that "'[it] is not speculative to infer that the nature of [a] telephone call was accusatory'" and that "'[a]n accusatory phone call from [plaintiff's supervisor], followed only two days' [sic] later by a police investigation regarding the same accusation, could reasonably convey to plaintiff that Jones was displeased, if not angry, about her use of FMLA leave.'" (DE # 21, at 4 (quoting DE # 19, at 12).) The court finds these inferences to be reasonable. These inferences—coupled with the allegation that defendant approved plaintiff's FMLA leave and that plaintiff provided her supervisor with the change fund vault's alarm code and keys—only further support the reasonable inference that defendant interfered with plaintiff's FMLA rights. As such, the court rejects defendant's arguments that Judge Swank drew improper inferences regarding the elements of plaintiff's FMLA interference claim.

Finally, defendant objects to Judge Swank's conclusion that "'it is not speculative to infer that, over time, Jones' hostility towards Plaintiff's use of FMLA leave had been building, and that Plaintiff's last period of leave in the summer of 2016 was the final straw which caused [plaintiff's supervisor] to terminate her and to blame the missing change fund on plaintiff as a pretext.'" (Id. (quoting DE # 19, at 14–15).) Plaintiff pleaded that she was terminated for failing to follow procedure regarding when she was allowed to deposit the change fund. (Compl., DE # 1, ¶ 57.) Plaintiff also pleaded, however, that she followed longstanding procedure regarding the change fund deposit. (Id. ¶ 56.) Thus, assuming both these allegations as true, it is wholly

6

reasonable to infer that defendant had other reasons for terminating plaintiff.  As plaintiff alleges that her supervisor had a long history of expressing her anger towards plaintiff's FMLA leave requests, it is reasonable to infer that she was terminated as a result of her use of FMLA leave. (See id. ¶¶ 12, 13, 16, 17, 32.)  This is further supported by plaintiff's allegation that she was terminated during the same month she was supposed to be returning from her FMLA leave. (Id. ¶¶ 46, 57.)

### III.  CONCLUSION

For the foregoing reasons, defendant's objections to the M&R are OVERRULED.  The court ADOPTS the M&R's analysis as its own.  Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.  Plaintiff's ADA and FMLA claims will be allowed to proceed.  Plaintiff cannot recover punitive damages of defendant.

This 12 September 2018.

_____
W. Earl Britt
Senior U.S. District Judge